UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANUP PARMAR,<br><br>     PLAINTIFF,<br><br>v.<br><br>CREDIT CONTROL, LLC<br><br>     DEFENDANT. | Case No.: 1:19-cv-00387<br><br>Judge Rebecca Pallmeyer |

## DEFENDANT CREDIT CONTROL LLC's STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant, Credit Control, LLC ("Credit Control") files it *Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment* in accordance with L.R. 56.1 as follows:

1.     On or about April 21, 2010, Plaintiff opened a New York Life Visa credit card with First Bank, a division of First National Bank of Omaha ("FNBO"), account ending in 2142 (the "Account"). Exhibit A, ¶ 8 (FNBO Dec.).

2.     Four times between January 2017 and November 2018, Plaintiff missed a payment and FNBO assigned the Account to Credit Control to cure the past due balance, while FNBO maintained its credit relationship with Plaintiff on the open Account.  Exhibit A, ¶ 9 (FNBO Dec.).

3.     On each occasion, except for the last, Plaintiff cured the past due amount and FNBO recalled the account from Credit Control.  Exhibit A, ¶ 10 (FNBO Dec.).

4.    On November 4, 2018, Plaintiff missed a minimum payment on the Account, and on November 17, 2018, the minimum payment balance of $76.00 was assigned to Credit Control. Exhibit A ¶19 (FNBO Dec.).

5.    The full balance on the Account was never accelerated by FNBO or due during the time the account was placed with Credit Control and the account remained open. Exhibit A ¶ 27 (FNBO Dec.).

6.    Plaintiff's Second Amended Complaint and its claims (DE 11) surround conduct solely occurring between November 17, 2018 (Date of assignment to Credit Control. and January 7, 2019 (date of recall from Credit Control by FNBO). Doc. 11.

7.    Credit Control's relationship with FNBO was a First Party Servicer. (See Exhibit 2 to Exhibit A, Statement of Work, First Party Collection Services Page 1). Credit Control was to act as "an extension of FNBO". *Id.*

8.    Plaintiff admits in his deposition testimony that he did not request phone calls to stop in the only relevant call with Credit Control on December 11, 2018. Exhibit B (Parmar Deposition), Page 31, lns 21 – Page 32, lns 1-2.

9.    At no point did Credit Control assert that the debt was in "default" – the dispositive issue presented in *Schlosser. Id.*; Exhibit C, ¶ 4(Pirotta Dec.).

10.    In fact, the ongoing monthly account statements received by Plaintiff from FNBO during November 2018 demonstrate that the Account remained active and open with FNBO with available credit after assignment of the minimum payment balance to Credit Control – reflecting the $76.00 minimum payment assigned to Credit Control as "due" on December 4, 2018. Exhibit A. ¶ 16-17; Exhibit 1 to Exhibit A, Page 89. (November Account Statement).

11.     At no point did Credit Control state to Plaintiff during any communication that the Account was in default and Credit Control never attempted to collect the balance on the account. Exhibit C  ¶ 4-5 (Pirotta Dec.).

12.     Credit Control was collecting in the name of FNBO, Plaintiff maintained an open an available credit line with FNBO, and FNBO continued to issue statements and otherwise service the Account. See generally Exhibit A (FNBO Dec.).

13.     Credit Control was only collecting a very small sub-portion of the Account (due" after assignment per November account statement) and as soon as the credit line was revoked by FNBO on or about January 7, 2019, FNBO recalled the account from Credit Control.  See Exhibit A, ¶ 24. (FNBO Dec.).

14.     Credit Control was simply acting as an extension and in the name of FNBO for purposes of curing minimum payments due on an open and non-defaulted revolving credit account.  Exhibit 2 to Exhibit A, Page 1-2 (Statement of Work First Party Collection Services).

15.     Plaintiff Parmar's was assigned to Credit Control by FNBO pursuant to a First Party Collection Services agreement.  Exhibit 2 to Exhibit A, Pg. 1-2 (Statement of Work First Party Collection Services).

16.      Pursuant to the First Party Agreement and in the relevant part, i) the parties agreed that **past due** accounts may be referred to Credit Control for first party collection services, ii) Credit Control and its employees shall act in all respects as an extension of FNBO's internal billing and collection departments and its conduct and activities shall be governed accordingly by FNBO, iii) Credit Control agreed to handle customer calls for FNBO in accordance with the First Party Agreement, FNBO's training materials, and FNBO's policies, procedures, and instructions, iv) Credit Control will adhere to FNBO's standards on call limits and voicemail messages, v) Credit Control shall perform its services in the name of FNBO, or its affiliates, vi) Credit Control

shall provide dedicated employees exclusively for performing the services under the First Party Agreement and shall not perform services for any other client or project of Credit Control, and vii) Credit Control shall participate in weekly conference calls with FNBO to review it performance against the expectations of FNBO. Exhibit 2 to Exhibit A (Statement of Work First Party Collection Services) (Emphasis Added).

17. Plaintiff's last payment was made on September 17, 2018 in the amount of $1,000.00 and the account was fully current at this time. Exhibit A, ¶ 11; Exhibit 1 to Exhibit A (FNBO Dec.), at Page 73).

18. On or about October 9, 2019, FNBO sent Plaintiff a monthly statement which indicated a credit line of $2,000.00, a total balance of $917.23, available credit of $1,082.00, and a minimum payment due of $28.00 with a due date of November 4, 2019. Exhibit A, ¶ 12 (FNBO Dec.), Exhibit 1 to Exhibit A at Page 73).

19. Plaintiff missed the minimum payment due on or before November 4, 2019. Exhibit A, ¶ 14 (FNBO Dec.).

20. On or about November 6, 2019, FNBO sent Plaintiff another monthly statement which indicated a credit line of $2,000.00, a total balance of $956.16, available credit of $1,043.00, and a minimum payment due of $76.00 with a due date of December 4, 2019. Exhibit A, ¶ 16 (FNBO Dec.).

21. Eleven days later, on November 17, 2018, FNBO assigned the $76.00 minimum payment balance (reflected as "minimum payment due" on **December 4, 2019** per statement issued November 6, 2018) to Credit Control to collect and cure the missed payment. Exhibit A (Dec. FNBO); Exhibit 1 to Exhibit A, Page 73).

22. On November 17, 2019, FNBO did not consider Plaintiff's Account in default and Plaintiff's Account was open with available credit. Exhibit A, ¶ 20.

23.     Per his deposition testimony, discussing a November 17, 2018 call from Credit Control shortly after assignment, Plaintiff did not consider the Account to be in default on the date the past due balance was assigned to Credit Control by FNBO:

> **Q: "So we listened to the November 17, 2018 call.  First of all is that your voice in the recording?**
> **A.      Yes"**

 Exhibit B (Parmar Deposition Page 28 Lns, 6-9).

> **Q: "Did you consider the card to be in default at the time of the phone call that we just listened to?**
> **A: No.**
> **Q. Okay.  When I say card, you understand I mean the card, the credit account, the revolving credit account?**
> **A. Right."**

 Exhibit B (Parmar Deposition Page 29 Lns, 19-22; Page 30, 1-2).

> **Q.     "Did you at this time on December 11, 2018, did you consider your New York Life Visa issued by First Bank, did you consider that account to be in default?"**
> **A. I don't believe – No, I don think so.**

Exhibit B (Parmar Deposition Page 31, lns 9-14).

24.     Credit Control only spoke with Plaintiff twice after assignment – once on November 17, 2018 and once on December 11, 2018.  Exhibit C ¶ 6 (Pirotta Dec.).

25.     Both conversations were recorded and listened to during Plaintiff's deposition. Exhibit C ¶ 6 (Pirotta Dec.).

26.     Per his testimony, Plaintiff believed the Account would remain open if he paid the minimum due at the time Credit Control contacted him.   Exhibit B, Pgs 28-29, Lines 21-2 (Parmar Deposition).

27.     At no point did Credit Control attempt to collect the total balance on the Account as only the past due minimum payments had been assigned to Credit Control for the purposes of curing the past due amounts.  Exhibit C, ¶ 5 (Pirotta Dec.).

28.     On or about December 6, 2019, FNBO sent Plaintiff another monthly statement which indicated a credit line of $2,000.00, a total balance of $1,007.64, and a minimum payment due of $137.00 with a due date of January 4, 2019. Exhibit A, ¶ 23 (FNBO Dec.).

29.     Not only was Plaintiff's Account not in default at the time of assignment, the Account was not in default during any time the past due balance was assigned to Credit Control. Exhibit A, ¶ 25.

30.     The sole purpose of FNBO's assignment of the past due minimum payment amount to Credit Control was for Credit Control to attempt to cure the delinquencies – and to avoid a default on the Account.  Exhibit A, ¶ 22 (FNBO Dec.).

31.     Parmar's account was assigned to Credit Control by FNBO pursuant to a First Party Collection Services agreement, dated September 22, 2016 (the "First Party Agreement"). See Exhibit A; Exhibit 2 to Exhibit A.

32.     Pursuant to the First Party Agreement and in the relevant part, i) the parties agreed that **past due** accounts may be referred to Credit Control for first party collection services, ii) Credit Control and its employees shall act in all respects as an extension of FNBO's internal billing and collection departments and its conduct and activities shall be governed accordingly by FNBO, iii) Credit Control agreed to handle customer calls for FNBO in accordance with the First Party Agreement, FNBO's training materials, and FNBO's policies, procedures, and instructions, iv) Credit Control will adhere to FNBO's standards on call limits and voicemail messages, v) Credit Control shall perform its services in the name of FNBO, or its affiliates, vi) Credit Control shall provide dedicated employees exclusively for performing the services under the First Party Agreement and shall not perform services for any other client or project of Credit Control, and vii) Credit Control shall participate in weekly conference calls with FNBO to review it performance against the expectations of FNBO.  See Exhibit 2 to Exhibit A.

6

33.     Credit Control identified itself as New York Life Visa Card or Firstbank in all calls with the Plaintiff.  Exhibit C, ¶ 7, (Pirotta Dec.).

34.     Credit Control only attempted to cure the minimum payment balance in all calls with Plaintiff. Exhibit C, ¶ 8 (Pirotta Dec.). Credit Control had dedicated representatives for accounts assigned by FNBO pursuant to the First Party Agreement.  Exhibit C, ¶ 9, (Pirotta Dec.); Exhibit 2 to Exhibit A (First Party Agreement).

35.     Credit Control did not receive any contingency fee/commission for work performed pursuant to the First Party Agreement.  Exhibit C, ¶ 10, (Pirotta Dec.).

36.     Credit Control spoke with Plaintiff only twice after assignment from FNBO – on November 17, 2018, and on December 11, 2018.  Exhibit C, ¶ 6, (Pirotta Dec.).  Plaintiff makes no request for Credit Control to cease contacting him in the November 17, 2018 call.  Exhibit B, Pg. 28, lns 6-13 (Parmar Deposition).

37.     After listening the entirety of the November 17, 2018 and December 11, 2018 calls during his deposition, Plaintiff stated as follows:

>     **Q.   So we listened to the November 17th, 2018 call.  First of all, was that your voice in the recording?**
>     **A.   Yes.**
>     **Q.   Okay.  At any time during that recording did you instruct the company that was calling you to stop calling you?**
>     **A.   No.**

Exhibit B, Pg. 28, lns 6-13 (Parmar Deposition).

>     **Q.   Mr. Parmar, I'm going to play you a December 11, 2018 recording in connection with your New York Life Visa card or First Bank card.  I'm going to ask you to listen to it and I'll have a few questions afterward.**

Exhibit B, Page 30, lns 10-14.

>     **Q.   So we just listened to the entirety of the one minute and 15 second phone call.  It's complete.  At any point during that phone call, did you hear yourself instruct whoever it was calling you to stop calling you?**
>     **A.   No, not myself**

Exhibit B, Page 31, lns. 21-24; Page 32, Lns 1-2.

38.     Credit Control did not communicate or speak to Plaintiff by phone other than on two occasions - during the November 17, 2018 phone call and during the December 11, 2018 phone call – both of which were played in their entirety at Plaintiff's deposition.  Exhibit C, ¶ 6.

Dated: November 7, 2019

                                        Respectfully submitted,

                                         /s/ PATRICK A. WATTS
                                        Patrick A. Watts
                                        IL State Bar No. 6202112
                                        Watts Law Group, LLC
                                        150 S. Wacker Drive, Ste. 2400
                                        Chicago, IL 60606
                                        P: (312) 725-8267
                                        F: (888) 632-6937
                                        pwatts@swattslaw.com

                        **CERTIFICATE OF SERVICE**

        The undersigned hereby certifies that on November 7, 2019, the foregoing was filed electronically with the Clerk of the Court and served by operation of the Court's electronic filing system to the following counsel of record:

Omar Tayseer Sulaiman
Alexander James Taylor
Marwan R. Daher
Sulaiman Law Group, Ltd.
2500 S. Highland Avenue
Suite 200
Lombard, IL 60148
(630) 575-8181
osulaiman@sulaimanlaw.com
ataylor@sulaimanlaw.com
mdaher@sulaimanlaw.com

                                        */s/ Patrick Watts*