## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ANUP PARMAR, | |
|     Plaintiff, | Case No: 1:19-cv-00387 |
| v. | |
| CREDIT CONTROL, LLC, | Honorable Chief Judge Rebecca R. Pallmeyer |
|     Defendant. | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS

**NOW COMES** ANUP PARMAR ("Plaintiff"), by and through his undersigned counsel, responding to Defendant CREDIT CONTROL, LLC'S ("Defendant") Statement of Undisputed Material Facts pursuant to Local Rule 56-1, states as follows:

1.      On or about April 21, 2010, Plaintiff opened a New York Life Visa credit card with First Bank, a division of First National Bank of Omaha ("FNBO"), account ending in 2142 (the "Account"). Exhibit A, ¶ 8 (FNBO Dec.).

**RESPONSE: Admit.**

2.      Four times between January 2017 and November 2018, Plaintiff missed a payment and FNBO assigned the Account to Credit Control to cure the past due balance, while FNBO maintained its credit relationship with Plaintiff on the open Account. Exhibit A, ¶ 9 (FNBO Dec.).

**RESPONSE: Admit to the extent that Plaintiff defaulted on the Account on four separate occasions. Defendant admits on multiple occasions during its deposition that it was collecting Plaintiff's "past due amount" on behalf of First National Bank of Omaha ("FNBO"). *See* Exhibit B, Defendant's Deposition testimony, 85:2-17; 92:20-25; 93:1-25; 94:1-5. Moreover, when asked, what debt Defendant was attempting to collect from Plaintiff, Defendant replied:**

1

"The balance owed on the account." *Id.* at 83:13-18.  Even more, Defendant testified, when presented with its own account notes, that it was attempting to reach Mr. Parmar to collect the "BIF" or Balance in Full. *Id.* at 107:6-25; 108:1-4. On November 17, 2018 (the date of assignment), Defendant's own account notes have a "BIF" notation. Specifically, Defendant's account note for November 17, 2018 states:

BK65 11/17/2018 12:42:07PM          BK65 TT CONS VERFD INFO MM CR **BIF DEMANDED** CH STATED THEY
                                    ARE OUT OF WORK FOR SOME TIME BUT THEY WILL BE ABLE TO
                                    MAKE A PAYMENT ON THEIR ACCT SOON. CH STATED THEY WILL
                                    CALL US IF THIER SITUATION CHANGES.

*See* **Plaintiff's Exhibit C, a true and correct copy of Defendant's account notes, p.2.**

      3.      On each occasion, except for the last, Plaintiff cured the past due amount and FNBO recalled the account from Credit Control. Exhibit A, ¶ 10 (FNBO Dec.).

**RESPONSE: Admit that Defendant obtained Plaintiff's account on November 17, 2018 and demanded Plaintiff to pay the Balance in Full. Specifically, when asked, what debt Defendant was attempting to collect from Plaintiff, Defendant replied: "The balance owed on the account."** *Id.* **at 83:13-18.  Even more, Defendant testified, when presented with its own account notes, that it was attempting to reach Mr. Parmar to collect the "BIF" or Balance in Full.** *Id.* **at 107:6-25; 108:1-4. On November 17, 2018 (the date of assignment), Defendant's own account notes have a "BIF" notation. Explicitly, Defendant's account note for November 17, 2018 states:**

BK65 11/17/2018 12:42:07PM          BK65 TT CONS VERFD INFO MM CR **BIF DEMANDED** CH STATED THEY
                                    ARE OUT OF WORK FOR SOME TIME BUT THEY WILL BE ABLE TO
                                    MAKE A PAYMENT ON THEIR ACCT SOON. CH STATED THEY WILL
                                    CALL US IF THIER SITUATION CHANGES.

**Likewise, on December 11, 2018, Defendant's account notes have another "BIF" or Balance in Full notation:**

BK92 12/11/2018 3:08:13PM           BK92 TT CONS VERFD INFO MM CR **BIF DEMANDED**
                                    ****RFDJC****
                                    Ch sttd he lost his job and that he will pay us back as soon as possible. ch
                                    sttd that we keep calling him after he already told us his situation.

2

*See* **Plaintiff's Exhibit C, a true and correct copy of Defendant's account notes, p. 2-3.**

4.      On November 4, 2018, Plaintiff missed a minimum payment on the Account, and on November 17, 2018, the minimum payment balance of $76.00 was assigned to Credit Control. Exhibit A ¶19 (FNBO Dec.).

**RESPONSE: Admit that Defendant obtained Plaintiff's account on November 17, 2018 when Plaintiff was in default. Defendant testified that First National Bank of Omaha ("FNBO"), the originating creditor placed Plaintiff's account to Defendant for collection on November 17, 2018. *See* Plaintiff's Exhibit B, Defendant's Deposition testimony, 85: 2-20. Deny that on November 17, 2018 (date of assignment) that Defendant was attempting to collect the "minimum payment balance of $76.00. On November 17, 2018 Defendant demanded Plaintiff to pay the Balance in Full. Moreover, when asked, what debt Defendant was attempting to collect from Plaintiff, Defendant replied: "The balance owed on the account." *Id.* at 83:13-18. Even more, Defendant testified, when presented with its own account notes, that it was attempting to reach Mr. Parmar to collect the "BIF" or Balance in Full. *Id.* at 107:6-25; 108:1-4. On November 17, 2018 (the date of assignment), Defendant's own account notes have a "BIF" notation. Specifically, Defendant's account note for November 17, 2018 states:**

BK65 11/17/2018 12:42:07PM          BK65 TT CONS VERFD INFO MM CR **BIF DEMANDED** CH STATED THEY
ARE OUT OF WORK FOR SOME TIME BUT THEY WILL BE ABLE TO
MAKE A PAYMENT ON THEIR ACCT SOON. CH STATED THEY WILL
CALL US IF THIER SITUATION CHANGES.

**Likewise, on December 11, 2018, Defendant's account notes have another "BIF" or Balance in Full notation:**

BK92 12/11/2018 3:08:13PM          BK92 TT CONS VERFD INFO MM CR **BIF DEMANDED**
****RFDJC****
Ch sttd he lost his job and that he will pay us back as soon as possible. ch
sttd that we keep calling him after he already told us his situation.

*See* **Plaintiff's Exhibit C, a true and correct copy of Defendant's account notes, p. 2-3.**

5.      The full balance on the Account was never accelerated by FNBO or due during the time the account was placed with Credit Control and the account remained open. Exhibit A ¶ 27

3

(FNBO Dec.).

**RESPONSE: Deny. Defendant testified that "Plaintiff's Account" was not assigned to Defendant until November 17, 2018 and it was not in Defendant's custody or control until November 17, 2018.** *See* **Exhibit B, Defendant's Deposition testimony, 101:6-20; 103:4-5. Furthermore, Plaintiff denies that on November 17, 2018 (date of assignment) that the full balance on the Account was never accelerated by FNBO or due during the time Plaintiff's account was placed with Defendant. According to its own testimony and documents, on November 17, 2018, Defendant placed a call to Plaintiff and demanded Plaintiff to pay the Balance in Full. Moreover, when asked, what debt Defendant was attempting to collect from Plaintiff, Defendant replied: "The balance owed on the account."** *Id.* **at 83:13-18. Even more, Defendant testified, when presented with its own account notes, that it was attempting to reach Plaintiff to collect the "BIF" or Balance in Full.** *Id.* **at 107:6-25; 108:1-4. On November 17, 2018 (the date of assignment), Defendant's own account notes have a "BIF" notation. Explicitly, Defendant's account note for November 17, 2018 states:**

| | |
|---|---|
| BK65 11/17/2018 12:42:07PM | BK65 TT CONS VERFD INFO MM CR **BIF DEMANDED** CH STATED THEY ARE OUT OF WORK FOR SOME TIME BUT THEY WILL BE ABLE TO MAKE A PAYMENT ON THEIR ACCT SOON. CH STATED THEY WILL CALL US IF THIER SITUATION CHANGES. |

**Likewise, on December 11, 2018, Defendant's account notes have another "BIF" or Balance in Full notation:**

| | |
|---|---|
| BK92 12/11/2018 3:08:13PM | BK92 TT CONS VERFD INFO MM CR **BIF DEMANDED** ****RFDJC**** Ch sttd he lost his job and that he will pay us back as soon as possible. ch sttd that we keep calling him after he already told us his situation. |

*See* **Plaintiff's Exhibit C, a true and correct copy of Defendant's account notes, p. 2-3.**

6. Plaintiff's Second Amended Complaint and its claims (DE 11) surround conduct solely occurring between November 17, 2018 (Date of assignment to Credit Control. and January 7, 2019 (date of recall from Credit Control by FNBO). Doc. 11.

4

**RESPONSE: Admit.**

7.      Credit Control's relationship with FNBO was a First Party Servicer. (See Exhibit 2 to Exhibit A, Statement of Work, First Party Collection Services Page 1). Credit Control was to act as "an extension of FNBO". *Id.,*

**RESPONSE: Deny. Defendant by its own admission and testimony is a third-party debt collector.** *See* **attached Exhibit A, a true and correct December 11, 2018 recording of a conversation between Plaintiff and a reprehensive of CCI stating it is a debt collector and a payment is needed to bring the account current.** *See also***, CCI's Responses to Plaintiff's Requests for Admission, p. 5, admitting CCI stated it was a debt collector. Moreover, Defendant testified on numerous occasions that CCI's principal business purpose is debt collection. Specifically, CCI testified that 100% of its principal business purpose is debt collection, that it only collects debts on behalf of others, that it doesn't collect its own debts, that CCI contracts with loan originators to collect debts on their behalf, that CCI does not collect on any debts that are current, it does not send out monthly statements, and admits to placing phone calls to consumers to facilitate the collection of debts.** *See* **Exhibit B, a true and correct copy of Defendant's Deposition.** *See* **Exhibit B, Defendant's Deposition testimony, 13:15-25; 14:1-20; 28:21-25; 29:10-23.**

**Likewise, Defendant testified that out of its 5 locations (Las Vegas, two in Missouri, Tennessee, and Florida) it has approximately 400 "collectors" working in their respective collection departments. Defendant also trains its "collectors" on compliance with the FDCPA.** *Id.* **at 15:6-25; 16:1-19; 23:6-12.**

8.      Plaintiff admits in his deposition testimony that he did not request phone calls to stop in the only relevant call with Credit Control on December 11, 2018. Exhibit B (Parmar Deposition), Page 31, lns 21 – Page 32, lns 1-2.

**RESPONSE: Deny. In the December 11, 2018, call recording with Plaintiff and Defendant's representative, Plaintiff stated: "you have been calling me a lot and I already mentioned it to you guys that I lost my job and I'll pay the credit card as soon as possible but you guys continue to call me." Defendant's representative stated: "I will put that in our notes and you will not receive any more calls in the meantime." *See* attached Exhibit A, a true and correct December 11, 2018 recording of a conversation between Plaintiff and a reprehensive of CCI stating it is a debt collector and a payment is needed to bring the account *current*. *See also*, Exhibit B, Defendant's deposition, 112:1-25; 113:1-25; 114:1-25**

9.      At no point did Credit Control assert that the debt was in "default" – the dispositive issue presented in *Schlosser*. *Id.*; Exhibit C, ¶ 4(Pirotta Dec.).

**RESPONSE: Deny. According to its own testimony and documents, on November 17, 2018, Defendant placed a call to Plaintiff and demanded Plaintiff to pay the Balance in Full. Moreover, when asked, what debt Defendant was attempting to collect from Plaintiff, Defendant replied: "The balance owed on the account." *See* Exhibit B, Defendant's deposition, 83:13-18.  Even more, Defendant testified, when presented with its own account notes, that it was attempting to reach Plaintiff to collect the "BIF" or Balance in Full. *Id*. at 107:6-25; 108:1-4. On November 17, 2018 (the date of assignment), Defendant's own account notes have a "BIF" notation. Explicitly, Defendant's account note for November 17, 2018 states:**

BK65 11/17/2018 12:42:07PM          BK65 TT CONS VERFD INFO MM CR **BIF DEMANDED** CH STATED THEY
ARE OUT OF WORK FOR SOME TIME BUT THEY WILL BE ABLE TO
MAKE A PAYMENT ON THEIR ACCT SOON. CH STATED THEY WILL
CALL US IF THIER SITUATION CHANGES.

**Likewise, on December 11, 2018, Defendant's account notes have another "BIF" or Balance in Full notation:**

BK92 12/11/2018 3:08:13PM          BK92 TT CONS VERFD INFO MM CR **BIF DEMANDED**
                                   ****RFDJC****
                                   Ch sttd he lost his job and that he will pay us back as soon as possible. ch
                                   sttd that we keep calling him after he already told us his situation.

*See* **Plaintiff's Exhibit C, a true and correct copy of Defendant's account notes, p. 2-3.**

**Furthermore, Defendant's statement is controverted by its own record and testimony.**

**Defendant testified that at no time does Defendant attempt to collect debt that is current.**

**Defendant testified that on November 17, 2018, the exact date Defendant obtained Plaintiff's**

**Account from FNBO, Plaintiff was past due.** *Id.* **at 92:17-25; 93:1-14. Even more so, each**

**instance in which Plaintiff's Account became past due, Defendant would add a code "Bank**

**Review" in its account notes to indicate the account is past due or in default. On November 17,**

**2018, the exact date Defendant obtained Plaintiff's account from FNBO, Plaintiff was in default.**

*Id.* **at 94:1-25; 95:1-17.   Moreover, Defendant testified on numerous occasions that CCI's**

**principal business purpose is debt collection. Specifically, CCI testified that 100% of its**

**principal business purpose is debt collection, that it only collects debts on behalf of others, that**

**it doesn't collect its own debts, that CCI contracts with loan originators to collect debts on their**

**behalf, that CCI does not collect on any debts that are current, it does not send out monthly**

**statements, and admits to placing phone calls to consumers to facilitate the collection of debts.**

*Id.* **at 13:15-25; 14:1-20; 28:21-25; 29:10-23. Moreover, Defendant testified that it was collecting**

**the "past due amount" from Plaintiff.** *See also,* **84:23-25; 85: 1-17.**

**Moreover, Defendant ironically has not provided any evidence that Plaintiff's**

**account was not contractually in default. Presumably, Defendant did not produce any underlying**

**agreement because it would cut to the very core of Defendant's case.**

10.     In fact, the ongoing monthly account statements received by Plaintiff from FNBO

during November 2018 demonstrate that the Account remained active and open with FNBO with

available credit after assignment of the minimum payment balance to Credit Control – reflecting

7

the $76.00 minimum payment assigned to Credit Control as "due" on December 4, 2018. Exhibit A. ¶ 16-17; Exhibit 1 to Exhibit A, Page 89. (November Account Statement).

**RESPONSE: Deny. On November 17, 2018 Defendant demanded Plaintiff to pay the Balance in Full. Moreover, when asked, what debt Defendant was attempting to collect from Plaintiff, Defendant replied: "The balance owed on the account."** *See* **Exhibit B, Defendant's deposition, at 83:13-18. Even more, Defendant testified, when presented with its own account notes, that it was attempting to reach Mr. Parmar to collect the "BIF" or Balance in Full.** *Id.* **at 107:6-25; 108:1-4. On November 17, 2018 (the date of assignment), Defendant's own account notes have a "BIF" notation. Specifically, Defendant's account note for November 17, 2018 states:**

BK65 11/17/2018 12:42:07PM  BK65 TT CONS VERFD INFO MM CR **BIF DEMANDED** CH STATED THEY ARE OUT OF WORK FOR SOME TIME BUT THEY WILL BE ABLE TO MAKE A PAYMENT ON THEIR ACCT SOON. CH STATED THEY WILL CALL US IF THIER SITUATION CHANGES.

*See* **Plaintiff's Exhibit C, a true and correct copy of Defendant's account notes, p. 2. Moreover, Defendant testified that it does not collect on debts that are current and that it was collecting the "past due amount" from Plaintiff on behalf of FNBO.** *See* **Exhibit B, Defendant's Deposition, 13:15-25; 14:1-20; 28:21-25; 29:10-23; 84:23-25; 85: 1-17.**

11.     At no point did Credit Control state to Plaintiff during any communication that the Account was in default and Credit Control never attempted to collect the balance on the account. Exhibit C ¶ 4-5 (Pirotta Dec.).

**RESPONSE: Deny. Defendant, when asked, what debt Defendant was attempting to collect from Plaintiff, Defendant replied: "The balance owed on the account."** *See* **Defendant's Deposition Testimony, 83:13-18. Even more, Defendant testified, when presented with its own account notes, that it was attempting to reach Mr. Parmar to collect the "BIF" or Balance in Full.** *Id.* **at 107:6-25; 108:1-4. On November 17, 2018 (the date of assignment), Defendant's**

own account notes have a "BIF" notation. Specifically, Defendant's account note for November 17, 2018 states:

BK65 11/17/2018 12:42:07PM     BK65 TT CONS VERFD INFO MM CR **BIF DEMANDED** CH STATED THEY ARE OUT OF WORK FOR SOME TIME BUT THEY WILL BE ABLE TO MAKE A PAYMENT ON THEIR ACCT SOON. CH STATED THEY WILL CALL US IF THIER SITUATION CHANGES.

Likewise, Defendant by its own admission and testimony is a third-party debt collector. *See* attached Exhibit A, a true and correct December 11, 2018 recording of a conversation between Plaintiff and a reprehensive of CCI stating it is a debt collector and a payment is needed to bring the account current. *See also*, CCI's Responses to Plaintiff's Requests for Admission, p. 5, admitting CCI stated it was a debt collector. Furthermore, Defendant testified that at no time does Defendant attempt to collect debt that is current. Defendant testified that on November 17, 2018, the exact date Defendant obtained Plaintiff's Account from FNBO, Plaintiff was past due. *See* Defendant's Deposition Testimony, 92:17-25; 93:1-14. Even more so, each instance in which Plaintiff's Account became past due, Defendant would add a code "Bank Review" in its account notes to indicate the account is past due or in default. On November 17, 2018, the exact date Defendant obtained Plaintiff's account from FNBO, Plaintiff was in default. *Id*. at 94:1-25; 95:1-17.  Moreover, Defendant testified on numerous occasions that CCI's principal business purpose is debt collection. Specifically, CCI testified that 100% of its principal business purpose is debt collection, that it only collects debts on behalf of others, that it doesn't collect its own debts, that CCI contracts with loan originators to collect debts on their behalf, that CCI does not collect on any debts that are current, it does not send out monthly statements, and admits to placing phone calls to consumers to facilitate the collection of debts. See Exhibit B, a true and correct copy of Defendant's Deposition, 13:15-25; 14:1-20; 28:21-25; 29:10-23. Moreover, Defendant testified that it was collecting the "past due amount" from Plaintiff. *See also*, 84:23-25; 85: 1-

9

**17.**

12.    Credit Control was collecting in the name of FNBO, Plaintiff maintained an open an available credit line with FNBO, and FNBO continued to issue statements and otherwise service the Account. *See* generally Exhibit A (FNBO Dec.).

**RESPONSE: Deny. In the December 11, 2018 recording produced by Defendant fails to identify itself as either Credit Control, LLC or of First National Bank of Omaha ("FNBO").** *See* **Defendant's deposition, 110:10-25; 111:1-25; 112: 1-25; Defendant's only evidence is the self-serving affidavit it has produced at this stage in the case. Moreover, at no time did FNBO place any calls to Plaintiff. Although Plaintiff admits to only have received statements from FNBO, Defendant placed all 92 collection calls to Plaintiff.**

13.    Credit Control was only collecting a very small sub-portion of the Account (due" after assignment per November account statement) and as soon as the credit line was revoked by FNBO on or about January 7, 2019, FNBO recalled the account from Credit Control. *See* Exhibit A, ¶ 24. (FNBO Dec.).

**RESPONSE: Deny. Defendant was collecting the balance in full. Defendant, when asked, what debt Defendant was attempting to collect from Plaintiff, Defendant replied: "The balance owed on the account."** *See* **Defendant's Deposition Testimony, 83:13-18.   Even more, Defendant testified, when presented with its own account notes, that it was attempting to reach Mr. Parmar to collect the "BIF" or Balance in Full.** *Id.* **at 107:6-25; 108:1-4. On November 17, 2018, Defendant's own account notes have a "BIF" notation. Specifically, Defendant's account note for November 17, 2018 states:**

BK65 11/17/2018 12:42:07PM        BK65 TT CONS VERFD INFO MM CR **BIF DEMANDED** CH STATED THEY ARE OUT OF WORK FOR SOME TIME BUT THEY WILL BE ABLE TO MAKE A PAYMENT ON THEIR ACCT SOON. CH STATED THEY WILL CALL US IF THIER SITUATION CHANGES.

**Admit that FNBO recalled the account from Credit Control "on or about" January 7, 2019.**

10

**This could be attributed to the fact that Plaintiff filed the underlying lawsuit against Defendant**

14. Credit Control was simply acting as an extension and in the name of FNBO for purposes of curing minimum payments due on an open and non-defaulted revolving credit account. Exhibit 2 to Exhibit A, Page 1-2 (Statement of Work First Party Collection Services).

**RESPONSE: Deny. Defendant was collecting the balance in full. Defendant, when asked, what debt Defendant was attempting to collect from Plaintiff, Defendant replied: "The balance owed on the account."** *See* **Defendant's Deposition Testimony, 83:13-18. Even more, Defendant testified, when presented with its own account notes, that it was attempting to reach Mr. Parmar to collect the "BIF" or Balance in Full.** *Id.* **at 107:6-25; 108:1-4. On November 17, 2018, Defendant's own account notes have a "BIF" notation. Specifically, Defendant's account note for November 17, 2018 states:**

BK65 11/17/2018 12:42:07PM        BK65 TT CONS VERFD INFO MM CR **BIF DEMANDED** CH STATED THEY ARE OUT OF WORK FOR SOME TIME BUT THEY WILL BE ABLE TO MAKE A PAYMENT ON THEIR ACCT SOON. CH STATED THEY WILL CALL US IF THIER SITUATION CHANGES.

**Defendant's own document states that Plaintiff was past due on the Account. Four times between January 2017 and November 2018, Plaintiff missed a payment and FNBO assigned the Account to Credit Control to cure the past due balance, while FNBO maintained its credit relationship with Plaintiff on the open Account. Exhibit A, ¶ 9 (FNBO Dec.). Moreover, Defendant testified that it does not collect on debts that are current and that it was collecting the "past due amount" from Plaintiff on behalf of FNBO.** *See* **Exhibit B, a true and correct copy of Defendant's Deposition, 13:15-25; 14:1-20; 28:21-25; 29:10-23; 84:23-25; 85: 1-17.**

15. Plaintiff Parmar's was assigned to Credit Control by FNBO pursuant to a First Party Collection Services agreement. Exhibit 2 to Exhibit A, Pg. 1-2 (Statement of Work First Party Collection Services).

**RESPONSE: Deny as this statement is unintelligible. To the extent it is referring to a**

document produced to Plaintiff, that document is titled **Statement of Work First Party Collection Services.**

16. Pursuant to the First Party Agreement and in the relevant part, i) the parties agreed that **past due** accounts may be referred to Credit Control for first party collection services, ii) Credit Control and its employees shall act in all respects as an extension of FNBO's internal billing and collection departments and its conduct and activities shall be governed accordingly by FNBO, iii) Credit Control agreed to handle customer calls for FNBO in accordance with the First Party Agreement, FNBO's training materials, and FNBO's policies, procedures, and instructions, iv) Credit Control will adhere to FNBO's standards on call limits and voicemail messages, v) Credit Control shall perform its services in the name of FNBO, or its affiliates, vi) Credit Control shall provide dedicated employees exclusively for performing the services under the First Party Agreement and shall not perform services for any other client or project of Credit Control, and vii) Credit Control shall participate in weekly conference calls with FNBO to review it performance against the expectations of FNBO. Exhibit 2 to Exhibit A (Statement of Work First Party Collection Services) (Emphasis Added).

**RESPONSE: Admit only that the document referred to as Exhibit 2 correctly depicts the Statement of Work First Party Collection Services. Denied that Defendant is merely an extension of FNBO. At no time was there common ownership between Defendant and FNBO, Defendant did not have any ownership, employees or officers in common with FNBO and thus does not fall within the §1692a(6)(A) exception of the FDCPA. Moreover, Defendant has its own policies, procedures, and instructions on compliance with the FDCPA.**

17. Plaintiff's last payment was made on September 17, 2018 in the amount of $1,000.00 and the account was fully current at this time. Exhibit A, ¶ 11; Exhibit 1 to Exhibit A (FNBO Dec.), at Page 73).

12

**RESPONSE: Admit.**

18.    On or about October 9, 2019, FNBO sent Plaintiff a monthly statement which indicated a credit line of $2,000.00, a total balance of $917.23, available credit of $1,082.00, and a minimum payment due of $28.00 with a due date of November 4, 2019. Exhibit A, ¶ 12 (FNBO Dec.), Exhibit 1 to Exhibit A at Page 73).

**RESPONSE: Deny. Plaintiff never received this monthly statement. The only corroboration to Defendant sending this monthly statement and Plaintiff receiving it is Defendant's self-serving affidavit and the accompanied documents.**

19.    Plaintiff missed the minimum payment due on or before November 4, 2019. Exhibit A, ¶ 14 (FNBO Dec.).

**RESPONSE: Admit. However, this is not the only payment Plaintiff missed.**

20.    On or about November 6, 2019, FNBO sent Plaintiff another monthly statement which indicated a credit line of $2,000.00, a total balance of $956.16, available credit of $1,043.00, and a minimum payment due of $76.00 with a due date of December 4, 2019. Exhibit A, ¶ 16 (FNBO Dec.).

**RESPONSE: Deny. Plaintiff never received this monthly statement. The only corroboration to Defendant sending this monthly statement and Plaintiff receiving it is Defendant's self-serving affidavit and the accompanied documents.**

21.    Eleven days later, on November 17, 2018, FNBO assigned the $76.00 minimum payment balance (reflected as "minimum payment due" on **December 4, 2019** per statement issued November 6, 2018) to Credit Control to collect and cure the missed payment. Exhibit A (Dec. FNBO); Exhibit 1 to Exhibit A, Page 73).

**RESPONSE: Deny. Plaintiff never received this monthly statement. The only corroboration to Defendant sending this monthly statement and Plaintiff receiving it is Defendant's self-**

serving affidavit and the accompanied documents.

22.     On November 17, 2019, FNBO did not consider Plaintiff's Account in default and

Plaintiff's Account was open with available credit. Exhibit A, ¶ 20.

**RESPONSE: Admit that in November of <u>2019</u>, FNBO considered Plaintiff's account as**

**current. Plaintiff filed a Complaint against Defendant on January 18, 2019.** *See* **Doc. #1.**

23.     Per his deposition testimony, discussing a November 17, 2018 call from Credit

Control shortly after assignment, Plaintiff did not consider the Account to be in default on the

date the past due balance was assigned to Credit Control by FNBO:

> **Q: "So we listened to the November 17, 2018 call. First of all is that your voice in the**
> **recording?**
> **A.      Yes"**

Exhibit B (Parmar Deposition Page 28 Lns, 6-9).

> **Q: "Did you consider the card to be in default at the time of the phone call that we**
> **just listened to?**
> **A: No.**
> **Q. Okay. When I say card, you understand I mean the card, the credit account, the**
> **revolving credit account?**
> **A. Right."**

Exhibit B (Parmar Deposition Page 29 Lns, 19-22; Page 30, 1-2).

> **Q.      "Did you at this time on December 11, 2018, did you consider your New York**
> **Life Visa issued by First Bank, did you consider that account to be in default?"**
> **A. I don't believe – No, I don't think so.**

Exhibit B (Parmar Deposition Page 31, lns 9-14).

**RESPONSE: Admit.**

24.     Credit Control only spoke with Plaintiff twice after assignment – once on

November 17, 2018 and once on December 11, 2018. Exhibit C ¶ 6 (Pirotta Dec.).

**RESPONSE: Admit that on both occasions Plaintiff spoke with Defendant he advised it that**

**he lost his job and that they keep calling him.** *See* **attached Exhibit A, a true and correct**

December 11, 2018 recording of a conversation between Plaintiff and a reprehensive of CCI stating it is a debt collector and a payment is needed to bring the account current. *See also* Defendant's deposition, 109: 4-9.

25.     Both conversations were recorded and listened to during Plaintiff's deposition. Exhibit C ¶ 6 (Pirotta Dec.).

RESPONSE: Admit.

26.     Per his testimony, Plaintiff believed the Account would remain open if he paid the minimum due at the time Credit Control contacted him. Exhibit B, Pgs 28-29, Lines 21-2 (Parmar Deposition).

RESPONSE: Admit.

27.     At no point did Credit Control attempt to collect the total balance on the Account as only the past due minimum payments had been assigned to Credit Control for the purposes of curing the past due amounts. Exhibit C, ¶ 5 (Pirotta Dec.).

RESPONSE: Deny. Defendant was collecting the balance in full. Defendant, when asked, what debt Defendant was attempting to collect from Plaintiff, Defendant replied: "The balance owed on the account." *See* Defendant's Deposition Testimony, 83:13-18. Even more, Defendant testified, when presented with its own account notes, that it was attempting to reach Mr. Parmar to collect the "BIF" or Balance in Full. *Id*. at 107:6-25; 108:1-4. On November 17, 2018, Defendant's own account notes have a "BIF" notation. Specifically, Defendant's account note for November 17, 2018 states:

BK65 11/17/2018 12:42:07PM          BK65 TT CONS VERFD INFO MM CR **BIF DEMANDED** CH STATED THEY ARE OUT OF WORK FOR SOME TIME BUT THEY WILL BE ABLE TO MAKE A PAYMENT ON THEIR ACCT SOON. CH STATED THEY WILL CALL US IF THIER SITUATION CHANGES.

Defendant's own document states that Plaintiff was past due on the Account. Four times between January 2017 and November 2018, Plaintiff missed a payment and FNBO assigned

**the Account to Credit Control to cure the past due balance, while FNBO maintained its credit**

**relationship with Plaintiff on the open Account. Def's Exhibit A, ¶ 9 (FNBO Dec.). Moreover,**

**Defendant testified that it does not collect on debts that are current and that it was collecting**

**the "past due amount" from Plaintiff on behalf of FNBO.** *See* **Exhibit B, a true and correct**

**copy of Defendant's Deposition, 13:15-25; 14:1-20; 28:21-25; 29:10-23; 84:23-25; 85: 1-17.**

28.     On or about December 6, 2019, FNBO sent Plaintiff another monthly statement

which indicated a credit line of $2,000.00, a total balance of $1,007.64, and a minimum payment

due of $137.00 with a due date of January 4, 2019. Exhibit A, ¶ 23 (FNBO Dec.).

**RESPONSE: Deny. Plaintiff never received this monthly statement. The only corroboration**

**to Defendant sending this monthly statement and Plaintiff receiving it is Defendant's self-**

**serving affidavit and the accompanied documents.**

29.     Not only was Plaintiff's Account not in default at the time of assignment, the

Account was not in default during any time the past due balance was assigned to Credit Control.

Exhibit A, ¶ 25.

**RESPONSE: Deny. Defendant was collecting the balance in full on November 17, 2018 (time**

**of assignment). Defendant, when asked, what debt Defendant was attempting to collect from**

**Plaintiff, Defendant replied: "The balance owed on the account."** *See* **Defendant's Deposition**

**Testimony, 83:13-18.  Even more, Defendant testified, when presented with its own account**

**notes, that it was attempting to reach Mr. Parmar to collect the "BIF" or** <u>**Balance in Full**</u>**.** *Id*.

**at 107:6-25; 108:1-4. On November 17, 2018, Defendant's own account notes have a "BIF"**

**notation. Specifically, Defendant's account note for November 17, 2018 states:**

BK65 11/17/2018 12:42:07PM          BK65 TT CONS VERFD INFO MM CR **<u>BIF DEMANDED</u>** CH STATED THEY
                                    ARE OUT OF WORK FOR SOME TIME BUT THEY WILL BE ABLE TO
                                    MAKE A PAYMENT ON THEIR ACCT SOON. CH STATED THEY WILL
                                    CALL US IF THIER SITUATION CHANGES.

**Furthermore, Defendant testified that at no time does Defendant attempt to collect debt that**

16

is current. Defendant testified that on November 17, 2018, the exact date Defendant obtained Plaintiff's Account from FNBO, Plaintiff was past due. *See* Defendant's Deposition Testimony, 92:17-25; 93:1-14. Even more so, each instance in which Plaintiff's Account became past due, Defendant would add a code "Bank Review" in its account notes to indicate the account is past due or in default. On November 17, 2018, the exact date Defendant obtained Plaintiff's account from FNBO, Plaintiff was in default. *Id*. at 94:1-25; 95:1-17. Moreover, Defendant testified on numerous occasions that CCI's principal business purpose is debt collection. Specifically, CCI testified that 100% of its principal business purpose is debt collection, that it only collects debts on behalf of others, that it doesn't collect its own debts, that CCI contracts with loan originators to collect debts on their behalf, that CCI does not collect on any debts that are current, it does not send out monthly statements, and admits to placing phone calls to consumers to facilitate the collection of debts. See Exhibit B, a true and correct copy of Defendant's Deposition, 13:15-25; 14:1-20; 28:21-25; 29:10-23. Moreover, Defendant testified that it was collecting the "past due amount" from Plaintiff. *See also*, 84:23-25; 85: 1-17.

30.     The sole purpose of FNBO's assignment of the past due minimum payment amount to Credit Control was for Credit Control to attempt to cure the delinquencies – and to avoid a default on the Account. Exhibit A, ¶ 22 (FNBO Dec.).

**RESPONSE: Deny. Defendant was collecting the balance in full on November 17, 2018 (time of assignment). Defendant, when asked, what debt Defendant was attempting to collect from Plaintiff, Defendant replied: "The balance owed on the account." *See* Defendant's Deposition Testimony, 83:13-18. Even more, Defendant testified, when presented with its own account notes, that it was attempting to reach Mr. Parmar to collect the "BIF" or <u>Balance in Full</u>. *Id*. at 107:6-25; 108:1-4. On November 17, 2018, Defendant's own account notes have a "BIF"**

**notation. Specifically, Defendant's account note for November 17, 2018 states:**

BK65 11/17/2018 12:42:07PM     BK65 TT CONS VERFD INFO MM CR **BIF DEMANDED** CH STATED THEY ARE OUT OF WORK FOR SOME TIME BUT THEY WILL BE ABLE TO MAKE A PAYMENT ON THEIR ACCT SOON. CH STATED THEY WILL CALL US IF THIER SITUATION CHANGES.

**Furthermore, Defendant testified that at no time does Defendant attempt to collect debt that is current. Defendant testified that on November 17, 2018, the exact date Defendant obtained Plaintiff's Account from FNBO, Plaintiff was past due.** *Id.* **at 92:17-25; 93:1-14. Even more so, each instance in which Plaintiff's Account became past due, Defendant would add a code "Bank Review" in its account notes to indicate the account is past due or in default. On November 17, 2018, the exact date Defendant obtained Plaintiff's account from FNBO, Plaintiff was in default.** *Id.* **at 94:1-25; 95:1-17. Moreover, Defendant testified on numerous occasions that CCI's principal business purpose is debt collection. Specifically, CCI testified that 100% of its principal business purpose is debt collection, that it only collects debts on behalf of others, that it doesn't collect its own debts, that CCI contracts with loan originators to collect debts on their behalf, that CCI does not collect on any debts that are current, it does not send out monthly statements, and admits to placing phone calls to consumers to facilitate the collection of debts.** *Id.* **at 13:15-25; 14:1-20; 28:21-25; 29:10-23. Moreover, Defendant testified that it was collecting the "past due amount" from Plaintiff.** *See also***, 84:23-25; 85: 1-17.**

   31.  Parmar's account was assigned to Credit Control by FNBO pursuant to a First Party Collection Services agreement, dated September 22, 2016 (the "First Party Agreement"). See Exhibit A; Exhibit 2 to Exhibit A.

**RESPONSE: Admit that Exhibit 2 to Exhibit A purports to be a document titled "First Party Agreement." At no time does this document specifically refer to Plaintiff, Plaintiff's account, the phone call Plaintiff received from Defendant. Defendant by its own admission and**

testimony is a third-party debt collector. *See* attached Exhibit A, a true and correct December 11, 2018 recording of a conversation between Plaintiff and a reprehensive of CCI stating it is a debt collector and a payment is needed to bring the account current. *See also*, CCI's Responses to Plaintiff's Requests for Admission, p. 5, admitting CCI stated it was a debt collector. Furthermore, Defendant testified that at no time does Defendant attempt to collect debt that is current. Defendant testified that on November 17, 2018, the exact date Defendant obtained Plaintiff's Account from FNBO, Plaintiff was past due. *See* Exhibit B, Defendant's Deposition Testimony, 92:17-25; 93:1-14. Even more so, each instance in which Plaintiff's Account became past due, Defendant would add a code "Bank Review" in its account notes to indicate the account is past due or in default. On November 17, 2018, the exact date Defendant obtained Plaintiff's account from FNBO, Plaintiff was in default. *Id*. at 94:1-25; 95:1-17. Moreover, Defendant testified on numerous occasions that CCI's principal business purpose is debt collection. Specifically, CCI testified that 100% of its principal business purpose is debt collection, that it only collects debts on behalf of others, that it doesn't collect its own debts, that CCI contracts with loan originators to collect debts on their behalf, that CCI does not collect on any debts that are current, it does not send out monthly statements, and admits to placing phone calls to consumers to facilitate the collection of debts. *Id.* at 13:15-25; 14:1-20; 28:21-25; 29:10-23. Moreover, Defendant testified that it was collecting the "past due amount" from Plaintiff. *Id.* at 84:23-25; 85: 1-17.

      32.       Pursuant to the First Party Agreement and in the relevant part, i) the parties agreed that **past due** accounts may be referred to Credit Control for first party collection services, ii) Credit Control and its employees shall act in all respects as an extension of FNBO's internal billing and collection departments and its conduct and activities shall be governed accordingly by FNBO, iii) Credit Control agreed to handle customer calls for FNBO in accordance with the First Party

19

Agreement, FNBO's training materials, and FNBO's policies, procedures, and instructions,

iv) Credit Control will adhere to FNBO's standards on call limits and voicemail messages, v) Credit

Control shall perform its services in the name of FNBO, or its affiliates, vi) Credit Control shall

provide dedicated employees exclusively for performing the services under the First Party

Agreement and shall not perform services for any other client or project of Credit Control, and

vii) Credit Control shall participate in weekly conference calls with FNBO to review it

performance against the expectations of FNBO. See Exhibit 2 to Exhibit A.

**RESPONSE: Admit only that the document Defendant referred to as Exhibit 2 to Exhibit A correctly depicts the Statement of Work First Party Collection Services. Denied that Defendant is merely an extension of FNBO. At no time was there common ownership between Defendant and FNBO, Defendant did not have any ownership, employees or officers in common with FNBO and thus does not fall within the §1692a(6)(A) exception of the FDCPA. Moreover, Defendant has its own policies, procedures, and instructions on compliance with the FDCPA. Deny. Despite Defendant's exhibit, Defendant, by its own admission and testimony is a third-party debt collector.** *See* **attached Exhibit A, a true and correct December 11, 2018 recording of a conversation between Plaintiff and a reprehensive of CCI stating it is a debt collector and a payment is needed to bring the account current.** *See also***, CCI's Responses to Plaintiff's Requests for Admission, p. 5, admitting CCI stated it was a debt collector. Moreover, Defendant testified on numerous occasions that CCI's principal business purpose is debt collection. Specifically, CCI testified that 100% of its principal business purpose is debt collection, that it only collects debts on behalf of others, that it doesn't collect its own debts, that CCI contracts with loan originators to collect debts on their behalf, that CCI does not collect on any debts that are current, it does not send out monthly statements, and admits to placing phone calls to consumers to facilitate the collection of debts. See Exhibit**

B, a true and correct copy of Defendant's Deposition. *See* **Exhibit B, Defendant's Deposition testimony, 13:15-25; 14:1-20; 28:21-25; 29:10-23.**

33.    Credit Control identified itself as New York Life Visa Card or Firstbank in all calls with the Plaintiff. Exhibit C, ¶ 7, (Pirotta Dec.).

**RESPONSE: Deny. In the December 11, 2018 recording produced by Defendant, Defendant fails to identify itself as either Credit Control, LLC or of First National Bank of Omaha ("FNBO").** *See* **Exhibit A.** *See also,* **Defendant's deposition, 110:10-25; 111:1-25; 112: 1-25; Defendant's only evidence is the self-serving affidavit it has produced at this stage in the case.**

34.    Credit Control only attempted to cure the minimum payment balance in all calls with Plaintiff. Exhibit C, ¶ 8 (Pirotta Dec.). Credit Control had dedicated representatives for accounts assigned by FNBO pursuant to the First Party Agreement. Exhibit C, ¶ 9, (Pirotta  Dec.); Exhibit 2 to Exhibit A (First Party Agreement).

**RESPONSE: Deny. Defendant was collecting the balance in full from Plaintiff on November 17, 2018 (time of assignment). Defendant, when asked, what debt Defendant was attempting to collect from Plaintiff, Defendant replied: "The balance owed on the account."** *See* **Exhibit B, Defendant's Deposition Testimony, 83:13-18. Even more, Defendant testified, when presented with its own account notes, that it was attempting to reach Mr. Parmar to collect the "BIF" or** Balance in Full. *Id.* **at 107:6-25; 108:1-4. On November 17, 2018, Defendant's own account notes have a "BIF" notation. Specifically, Defendant's account note for November 17, 2018 states:**

BK65 11/17/2018 12:42:07PM        BK65 TT CONS VERFD INFO MM CR **BIF DEMANDED** CH STATED THEY
                                 ARE OUT OF WORK FOR SOME TIME BUT THEY WILL BE ABLE TO
                                 MAKE A PAYMENT ON THEIR ACCT SOON. CH STATED THEY WILL
                                 CALL US IF THIER SITUATION CHANGES.

**Furthermore, Defendant testified that at no time does Defendant attempt to collect debt that is current. Defendant testified that on November 17, 2018, the exact date Defendant obtained**

Plaintiff's Account from FNBO, Plaintiff was past due. *Id.* at 92:17-25; 93:1-14. Even more so, each instance in which Plaintiff's Account became past due, Defendant would add a code "Bank Review" in its account notes to indicate the account is past due or in default. On November 17, 2018, the exact date Defendant obtained Plaintiff's account from FNBO, Plaintiff was in default. *Id.* at 94:1-25; 95:1-17.  Moreover, Defendant testified on numerous occasions that CCI's principal business purpose is debt collection. Specifically, CCI testified that 100% of its principal business purpose is debt collection, that it only collects debts on behalf of others, that it doesn't collect its own debts, that CCI contracts with loan originators to collect debts on their behalf, that CCI does not collect on any debts that are current, it does not send out monthly statements, and admits to placing phone calls to consumers to facilitate the collection of debts. *Id.* at 13:15-25; 14:1-20; 28:21-25; 29:10-23. Moreover, Defendant testified that it was collecting the "past due amount" from Plaintiff. *See also*, 84:23-25; 85: 1-17.

35. Credit Control did not receive any contingency fee/commission for work performed pursuant to the First Party Agreement. Exhibit C, ¶ 10, (Pirotta Dec.).

**RESPONSE: Admit only that Exhibit C, ¶ 10, (Pirotta Dec.) states as much but fails to cite and supporting evidence to this statement.**

36. Credit Control spoke with Plaintiff only twice after assignment from FNBO – on November 17, 2018, and on December 11, 2018. Exhibit C, ¶ 6, (Pirotta Dec.).  Plaintiff makes no request for Credit Control to cease contacting him in the November 17, 2018 call. Exhibit B, Pg. 28, lns 6-13 (Parmar Deposition).

**RESPONSE: Deny. In the December 11, 2018, call recording with Plaintiff and Defendant's representative, Plaintiff stated: "you have been calling me a lot and I already mentioned it to you guys that I lost my job and I'll pay the credit card as soon as possible but you guys**

continue to call me." Defendant's representative stated: "I will put that in our notes and you will not receive any more calls in the meantime." *See* attached Exhibit A, a true and correct December 11, 2018 recording of a conversation between Plaintiff and a reprehensive of CCI stating it is a debt collector and a payment is needed to bring the account *current*. *See also*, Defendant's deposition, 112:1-25; 113:1-25; 114:1-25.

37.     After listening the entirety of the November 17, 2018 and December 11, 2018 calls during his deposition, Plaintiff stated as follows:

> **Q.     So we listened to the November 17th, 2018 call. First of all, was that your voice in the recording?**
> **A.     Yes.**
> **Q.     Okay. At any time during that recording did you instruct the company that was calling you to stop calling you?**
> **A.     No.**

Exhibit B, Pg. 28, lns 6-13 (Parmar Deposition).

> **Q. Mr. Parmar, I'm going to play you a December 11, 2018 recording in connection with your New York Life Visa card or First Bank card. I'm going to ask you to listen to it and I'll have a few questions afterward.**

Exhibit B, Page 30, lns 10-14.

> **Q. So we just listened to the entirety of the one minute and 15 second phone call.  It's complete. At any point during that phone call, did you hear yourself instruct whoever it was calling you to stop calling you?**
> **A.   No, not myself**

Exhibit B, Page 31, lns. 21-24; Page 32, Lns 1-2.

**RESPONSE: Admit.**

38.     Credit Control did not communicate or speak to Plaintiff by phone other than on two occasions - during the November 17, 2018 phone call and during the December 11, 2018 phone call – both of which were played in their entirety at Plaintiff's deposition. Exhibit C, ¶ 6.

**RESPONSE: Admit.**

Dated:  December 18, 2019

Respectfully submitted,


s/ Marwan R. Daher
Marwan R. Daher, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 S. Highland Ave., Ste. 200
Lombard, IL 60148
Phone (630) 537-1770
mdaher@sulaimanlaw.com

## **CERTIFICATE OF SERVICE**

I, Marwan R. Daher, an attorney, certify that on December 18, 2019, I caused the foregoing PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS to be served upon counsel of record through operation of the Court's Case Management/Electronic Case File (CM/ECF) system.


/s/ Marwan R. Daher
*Counsel for Plaintiff*